in section 9 [Act Feb. 4, 1887, c. 104, 24 Stat. 382 (Comp. St. 1913, § 8573)]. But if the carrier's rule, fair on its face, has been equally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved; the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in commerce, may be prosecuted either in the state or federal courts."

The effect of the holding by the United States Supreme Court is to accord to the filing of the tariff an effect consonant with an actual determination of reasonableness by the Commission. Such a conclusion is, to my mind, to be justified only upon the argument that the carrier is to be restricted only within the confines of the statute, and that by the filing of the tariff such carrier has complied with the full statutory requirement, so that the tariff charged becomes presumably reasonable, and that such presumption obtains until the Commission has otherwise determined in a proceeding to that end.

The above views seem at first sight to be at variance with many of the expressions in Loomis v. Lehigh Valley R. R. Co., 208 N. Y. 312, 101 N. E. 907. A closer examination, however, discloses that there is no necessary discrepancy between the two holdings. In the Loomis Case the question at issue was the obligation of the railroad company to furnish properly equipped cars. There the court said:

"Primarily the question is not one of rates or regulation at all, but of the carrier's failure to perform its initial duty to give the shippers cars fit for the service for which they were furnished."

The application of the decision in Pennsylvania Railroad Company v. Puritan Coal Mining Co., supra, to the present case, cannot be doubted. There is no claim made of any discriminatory application of the rule. The complaint lies against the rule itself, which permitted the making of this excess charge. The question of the propriety of the rule seems to be confided for initial determination to the Public Service Commission.

These views require reversal, and, inasmuch as there cannot be a recovery under the conceded facts of the case, the complaint should be dismissed. All concur.

Judgment and order reversed, and judgment directed for the defendant, dismissing the complaint, with costs, including the costs of this appeal.

---

## MILLETTE v. NEW YORK, W. & B. RY. CO.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

1. MASTER AND SERVANT ⬤⇒278—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), to recover damages for her husband's death, evidence that deceased was repairing a part of the electrical appliances on a bridge over defendant's railroad, that only a part of the appliances on the bridge were dead, that others were charged with a current of high tension, that he was standing on a raised plank, slightly inclined, to reach his work on knife switches, from which the current had not been turned, that he did not know that it had not been turned off, and that a connection between the knife switch

and the receiving jaw caused instant death, sustained a finding of defendant's negligence in not shutting the current from such appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

2. MASTER AND SERVANT ☞281—ACTION FOR INJURY—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Such evidence warranted the jury in negativing contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. ☞281.]

3. MASTER AD SERVANT ☞280—ACTION FOR INJURY—SUFFICIENCY OF EVIDENCE—ASSUMPTION OF RISK.

Such evidence warranted a finding against the defense of assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 981–986; Dec. Dig. ☞280.]

4. DEATH ☞99—EXCESSIVE DAMAGES.

A verdict of $22,750, for the death of a foreman engaged in repairing electrical appliances on defendant's railroad, earning $105 a month and paying to his wife $90 to $95 monthly, was excessive, and a reduction to $15,000 was within the trial court's discretion.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. ☞99.]

Appeals from Trial Term, Westchester County.

Action by Ellen C. Millette, as administratrix of William L. Millette, deceased, against the New York, Westchester & Boston Railway Company. From a judgment upon the verdict of a jury in favor of the plaintiff, and from so much of an order as denied its motion for a new trial, defendant appeals; and from so much of an order as set aside the verdict and granted a new trial, unless plaintiff stipulated to reduce the verdict to $15,000, plaintiff appeals. Judgment and order affirmed.

Argued before JENKS, P. J., and THOMAS, MILLS, RICH, and PUTNAM, JJ.

Thomas J. O'Neill, of Yonkers (L. F. Fish, of New York City, on the brief), for plaintiff.

Ralph Polk Buell, of New York City (George S. Graham, of New York City, on the brief), for defendant.

PER CURIAM. Under the federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), plaintiff recovered, as damages for her husband's death, a verdict of $22,750, which the trial court reduced to $15,000. Defendant appeals from the judgment, and from the refusal to set aside the verdict wholly, and plaintiff appeals from the reduction of the jury's verdict.

[1-3] Deceased met his death while he was repairing a part of the electrical apparatus on the West Farms Anchor Bridge over the defendant's railroad. These bridges are points where the electrical transmission may be broken or interrupted by certain circuit breakers which apply to the lighting systems and to the track systems. Although

these repairs had been going on during two or three days, only a part of the appliances on this bridge were dead, as others were charged with a current of high tension. On the day of the accident, plaintiff had first worked on a bus breaker, which was not charged. After finishing this relatively safe work, the deceased was called to the work on the knife switches, where he had to stand on a raised plank, slightly inclined, to reach the part where he was to help. It was claimed that this plank was slippery from grease. These parts also could be isolated by shutting off the current, which precaution would not interfere with the train operation. Such had been the practice when these switches on this same anchor bridge had been previously repaired. There was also evidence of a rule of defendant's railroad, and of other railroads electrically operated, not to allow work to be done on any 11,000-volt apparatus while it was alive, but instead to free it by shutting off the electrical current.

After reaching this place, deceased had a knife switch, which another workman looked at. Just then the roar of a shock was heard, resulting from the knife switch touching, and so making a connection with, the live receiving jaw—with effects so severe as to cause instant death. On this testimony, the jury could find that it was negligence not to kill these breakers and other parts, and that deceased had not been told, and had no reason to suppose, that the receiving jaws were charged. On this ground, by their verdict, the jury could and did negative contributory negligence, and also could properly find against the defense of assumption of risk, since it does not appear that deceased was aware that these jaws had not been killed as prudence required.

[4] But for the death of a foreman earning $105 a month, and paying to his wife $90 to $95 monthly, a verdict of $22,750 was excessive. The annual interest thereon would make an income beyond what the plaintiff had been receiving from the deceased's earnings. Hence the trial justice acted within his discretion in cutting down the verdict to $15,000.

The judgment and order are therefore affirmed. As these are cross-appeals, the affirmance is without costs.